**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE PARISHES**

| | |
|---|---|
| LISA SHAW, on behalf of herself and all others similarly situated, | ) Case No. |
| | ) |
| | ) |
| Plaintiff, | ) CLASS ACTION COMPLAINT |
| | ) |
| vs. | ) |
| | ) JURY TRIAL DEMANDED |
| TURTLE CREEK ASSETS, LTD. and GORDON ENGLE, individually, | ) |
| | ) |
| | ) |
| Defendants. | |

Plaintiff, LISA SHAW ("Plaintiff"), on behalf of herself and all others similarly situated, alleges the following upon information and belief based upon personal knowledge:

## NATURE OF THE CASE

1. Plaintiff brings this action for himself and others similarly situated seeking damages and any other available legal or equitable remedies resulting from the illegal actions of Defendants, TURTLE CREEK ASSETS, LTD. ("Turtle Creek") and GORDON ENGLE ("Engle"), individually (collectively "Defendants"), in negligently, knowingly, and/or willfully communicating with Plaintiff and by engaging in any conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt; using language the natural consequence of which is to abuse the reader; using false, deceptive, or misleading representation or means in connection with the collection of any debt; representing that nonpayment of any debt will result in the arrest or imprisonment of any person unless such action is lawful, and the debt collector intends to take such action; threatening to take action that cannot legally be taken or that is not intended to be taken; using any false representation or deceptive means to collect or attempt

to collect any debt;  failing to disclose that the communication is from a debt collector; using any business, company, or organization name other than the true name of the debt collector's business, company, or organization; and failing to send Plaintiff a written notice of his alleged debt containing the information required by § 1692g(a)(1)-(5), in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

## JURISDICTION & VENUE

2. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, and 15 U.S.C. § 1692k.

3. Jurisdiction of this court arises pursuant to 15 U.S.C. § 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy."

4. Venue is proper in the United States District Court for the Western District of Louisiana because Defendants do or transact business in this District.

## PARTIES

5. Plaintiff is a natural person residing in the City of Calhoun, Ouachita Parish, State of Louisiana and is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3).

6. At all relevant times herein, Defendants were engaged, by use of the mails and telephone, in the business of collecting a debt from Plaintiff which qualifies as a "debt," as defined by the FDCPA, 15 U.S.C. § 1692a(5).[1]

7. The principal purpose of Defendants' business is the collection of debts they purchased from third parties, using interstate commerce or the mails, and therefore are "debt

---

[1] Other lawsuits have been filed against Defendant for unlawful debt collection. For example, Defendant was named a defendant in at least two FDCPA lawsuits recently filed based on allegations of Defendant making empty threats to consumers to coerce the consumers into making a payment to Defendant. *See Daniel Aveline v. Turtle Creek Assets, Ltd.*, Case No 2:19-cv-120 (N.D. Ind. March 27, 2019) (Doc. No. 1, ¶¶ 23-24); *Brooke Watts v. Turtle Creek Assets, Ltd.*, Case No 3:19-cv-00055 (M.D. Miss. March 28, 2019), (Doc. No 1 ¶¶ 21-26).

collector[s]" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

8. Defendants are "debt collector[s]" pursuant to 15 U.S.C. § 1692a(6) of the FDCPA because in the process of collecting their own debts, they use any name other than their own which would indicate that a third person is collecting or attempting to collect such debts.

9. Engle is the Chief Executive Officer at Turtle Creek.

10. Section 392.001(7) of the Texas Debt Collection Act ("TDCA") defines a "third-party debt collector" as being the same as a "debt collector" as defined by 15 U.S.C. § 1692a(6) of the FDCPA.

11. Pursuant to § 392.101(a) of the TDCA "[a] third-party debt collector . . . may not engage in debt collection unless the third-party debt collector . . . has obtained a surety bond issued by a surety company authorized to do business in this state as prescribed by this section."

12. Because Turtle Creek is a "third-party debt collector" pursuant to § 392.101(a) of TDCA, it has secured a surety bond and filed it with the Office of the Texas Secretary of State.

13. According to the Office of the Texas Secretary of State's website, as a result of a Debt Collector Search, Turtle Creek filed its bond on May 10, 2017, is in active status, and is bonded by the Hartford Casualty Insurance Company.[2]  (A true-and-correct copy of the search results for Turtle Creek is attached hereto as Exhibit A).

14. Turtle Creek is a Texas business corporation and debt collector headquartered in the City of Dallas, Dallas County, State of Texas.

15. According to the Office of the Texas Comptroller of Public Accounts' website, as a result of a Taxable Entity Search, Turtle Creek's mailing address is: 5331 Spring Valley Road,

---

[2] https://direct.sos.state.tx.us/debtcollectors/dcsearch.asp (last accessed June 7, 2019).

Dallas, TX 75254-3009.[3]  (A true-and-correct copy of the search results for Turtle Creek is attached hereto as Exhibit B).

16. During the course of its attempts to collect debts, Defendants send to alleged debtors bills, statements, and/or other correspondence, via the mail and/or electronic mail, and initiates contact with alleged debtors via various means of telecommunication, such as by telephone and facsimile.

17. Employees can be held personally liable under the FDCPA. *Robinson v. Managed Accounts Receivable Corp.*, 654 F. Supp.2d 1051 (C.D. Cal. 2009); See also, *Schwarm v. Craighead*, 552 F. Supp.2d 1056 (E.D. Cal 2008).

18. Most courts that have addressed the issue have held that the corporate structure does not insulate shareholders, officers, or directors from personal liability under the FDCPA. See *Schwarm v. Craighead*, 552 F. Supp.2d 1056 (E.D. Cal 2008); *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433 (6th Cir. 2008); *Teng v. Metro. Retail Recovery, Inc.*, 851 F. Supp. 61 (E.D. NY 1994); *Del Campo v. Kennedy*, 491 F. Supp 2d 891 (N.D. Cal. 2006); *Brumbelow v. Law Offices of Bennett & Deloney, P.C.*, 372 F.Supp.2d 615 (D. Utah 2005); *Albanese v. Portnoff Law Associates, Ltd.*, 301 F.Supp.2d 389 (E.D. PA 2004); *Brink v. First Credit Res.*, 57 F.Supp.2d 848 (D.AR 1999); *Pikes v. Riddle*, 38 F.Supp2d 639 (N.D. IL 1998); *Ditty v. CheckRite*, 973 F.Supp.

### BACKGROUND

19. Aaron's, Inc. (hereinafter, "Aaron's") sells its delinquent consumer paper to Turtle Creek at a fraction of its face value. See *Turtle Creek Assets, Ltd. v. Aaron's Inc.*, Case No 1:15-cv-03851 (N.D. Tex. November 3, 2015). (Doc. No. 1, ¶ 1).

---

[3] https://mycpa.cpa.state.tx.us/coa/coaSearchBtn (last accessed June 7, 2019).

20. Aaron's sells to Turtle Creek its unpaid consumer rental purchase agreement accounts, which have been charged off by Aaron's ("Consumer Paper"). *Id.* (Doc. No. 1-1, p.1).

21. The accounts purchased by Turtle Creek from Aaron's, which comprise the Consumer Paper, were charged-off as uncollectible in accordance with the usual and customary practices of Aaron's. *Id.* (Doc. No. 1-1, p.1).

22. In connection with the Consumer Paper that Turtle Creek purchases from Aarons, Turtle Creek represents and warranties that Turtle Creek has complied with, and is in compliance, in all material respects, with each law that is applicable to Turtle Creek, or the purchase, ownership, use, and collection of the Consumer Paper, including, but without limitation, the Gramm–Leach–Bliley Act, the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, and all other United States federal and state laws that pertain to the extension of consumer credit and/or the collection of consumer credit obligations. *Id.* (Doc. No. 1-1, pp. 2, 8).

23. In connection with the Consumer Paper that Turtle Creek purchases from Aaron's, Turtle Creek represents and warranties that Turtle Creek shall not use the name of Aaron's in any way in the operation of its collection of the accounts which comprise the Consumer Paper including, but not limited to, checks, drafts, letters, and forms, except that Aaron's shall permit Turtle Creek to refer to a purchased account in the body of a collection letter as an account purchased from Aaron's. *Id.* (Doc. No. 1-1, p.5).

24. Aaron's sells its delinquent Consumer Paper to Turtle Creek at a fraction of its face value. See *Turtle Creek Assets, Ltd. v. Aaron's Inc.*, Case No 1:15-cv-03851 (N.D. Tex. Nov. 3, 2015). (Doc. No. 1, ¶ 1).

25. After Turtle Creek purchases consumer paper from Aaron's, Turtle Creek seeks to enforce

the consumer paper itself or repackage the consumer paper by region and sell it. (Doc. No. 1, ¶ 2).

26. As of November 2015, Turtle Creek had purchased over $835 Million in consumer paper from Aaron's. (Doc. No. 1, ¶ 5).

27. Aaron's is a specialty retailer who "markets its goods and services primarily to sub-prime customers by offering high-interest financing or payment options. However, those payment plans **often result in consumer default**." (Doc. No. 1, ¶ 11).

28. Turtle Creek is "a privately-owned Dallas-based company in the business of purchasing large amounts of delinquent consumer paper from banks, credit card companies, and consumer finance companies. As part of its business model, [Turtle Creek] enters into contracts with large portfolio debt-sellers, re-packages the purchased consumer paper by state or region, and then either seeks to enforce the consumer paper itself, or sells the re-packaged consumer paper to downstream buyers by region for a margin. [Turtle Creek] has bought and sold several billions-of-dollars of paper through years." (Doc. No. 1, ¶ 12).

29. "In early 2010, [Turtle Creek] approached Aaron's about purchasing its consumer paper that it had charged-off as uncollectible. After months of negotiations, [Turtle Creek] agreed to purchase a large bulk file of Aaron's consumer paper. Once [Turtle Creek] purchased a large bulk file of Aaron's consumer paper, it re-packaged it by region and sold it to downstream buyers across the country for a margin. Over the course of the next two years, [Turtle Creek] continued to buy Aaron's consumer paper and sell it to downstream buyers." (Doc. No. 1, ¶ 13).

30. From June 15, 2012 to February 15, 2013, "Aaron's agreed to sell approximately $11-13 Million of its Accounts to [Turtle Creek] . . . in exchange for [Turtle Creek] paying Aaron's

1.50% of the Accounts' face value."  (Doc. No. 1, ¶ 15).

31. The following websites belong to Turtle Creek: (1) http://forwardproperties.net ("Forward Properties"); and (2) http://www.turtlecreekassets.com/category/turtle-creek-assets/ ("Turtle Creek Assets").

32. Turtle Creek's Forward Properties website contains the following disclosures: "[p]lease note that this communication is from a debt collector and this is an attempt to collect a debt. Any information obtained will be used for that purpose" and "[a]t www.forwardproperties.net, you can find the same important information as on your customer letter, such as the original creditor, seller, merchant, account balance, account offers, and more." (A true-and-correct copy of which is attached hereto as Exhibit C).[4]

33. Turtle Creek's Turtle Creek Assets website contains the following disclosures: "[Turtle Creek] is a recognized leader in the global receivables trading and debt collection industry for over twenty years," "[i]f you received a certified letter regarding your Aaron's Rent to Own account from Turtle Creek Assets LLC, please call the following number IMMEDIATELY to resolve your account status and avoid a possible criminal complaint being filed: 1-888-427-0997" and "[f]ailure to return rental property is a crime and criminal complaints are actively being filed by Turtle Creek Assets throughout the country. Click here to view the thousands of criminal complaints that have already been filed by Aaron's: Rent to Own in North Carolina." (A true-and-correct copy of which is attached hereto as Exhibit D).[5]

---

[4] http://forwardproperties.net (last accessed May 21, 2019).
[5] http://www.turtlecreekassets.com/category/turtle-creek-assets/ (last accessed May 21, 2019).

34. Turtle Creek's website contains links to the following articles: "HOW RENTING FURNITURE IN TEXAS CAN LAND YOU IN JAIL," "PENNSYLVANIA PROSECUTERS PURSUE CHARGES FOR PEOPLE WHO FALL BEHIND ON RENT-TO-OWN PAYMENTS," "WOMEN UPSET AFTER THEY SAID AARON'S HAD THEM ARRESTED," and "POLICE OBTAIN A WARRANT FOR LOCAL MAN ON THEFT CHARGES." *See* Exhibit D.

## LISA SHAW v. TURTLE CREEK ASSETS, LTD.

35. Within the one year preceding the filing of this Complaint, Turtle Creek contacted Plaintiff in an attempt to collect an alleged outstanding consumer debt originating with Aaron's.

36. In May 2019, in its attempt to collect the alleged debt owed by Plaintiff, Turtle Creek sent Plaintiff a collection letter (hereinafter, "Collection Letter"). (A true-and-correct copy of which is attached hereto as Exhibit E).

37. The Collection Letter was purportedly sent to Plaintiff from "Turtle Creek Assets, LLC" with its address being 5331 Spring Valley Road, Dallas, TX 75254.

38. "Turtle Creek Assets, LLC" is a phony legal-entity alias used by Turtle Creek.

39. According to the Office of the Texas Comptroller of Public Accounts' website, as a result of a Taxable Entity Search, "Turtle Creek Assets, LLC" does not exist.[6]

40. According to the Office of the Louisiana Secretary of State's website, as a result of a Business Search, "Turtle Creek Assets, LLC" does not exist.[7]

41. Although "Turtle Creek Assets, LLC" has the suffix "LLC" designating that it is supposedly a limited liability company, "Turtle Creek Assets, LLC" it is not a legal entity.

---

[6] https://mycpa.cpa.state.tx.us/coa/coaSearchBtn (last accessed June 7, 2019).
[7] https://coraweb.sos.la.gov/commercialsearch/commercialsearch.aspx (last accessed June 7, 2019).

42. Turtle Creek is behind the façade of Turtle Creek Assets, LLC and Turtle Creek is nothing more than a debt buyer.

43. "Turtle Creek Assets, LLC" is not the true name of the Turtle Creek's business, company, or organization.

44. The Collection Letter identifies the call back number to Turtle Creek Assets, LLC as "1-888-427-0997".

45. The Collection Letter refers to the sender as "A Receivables Trading Company."

46. As introduced above, www.forwardproperties.net is Turtle Creek's web address.

47. Under the heading "PRIVACY NOTICE" on the attached Exhibit C, Turtle Creek's website indicates that it is the website of "Turtle Creek Assets, Ltd."

48. Turtle Creek Assets, Ltd. and Turtle Creek Assets, LLC are one and the same.

49. The Collection Letter seeks to collect a purported consumer debt incurred for personal, family or household purposes.

50. The Collection Letter does not contain the amount of the debt, as required by § 1692g(a)(1) of the FDCPA.

51. The Collection Letter does not contain the disclosure that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector, as required by § 1692g(a)(3) of the FDCPA.

52. The Collection Letter does not contain the disclosure that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment

against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector, as required by § 1692g(a)(4) of the FDCPA.

53. The Collection Letter does not contain the disclosure that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor, as required by § 1692g(a)(5) of the FDCPA.

54. The Collection Letter does not contain the disclosure that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, as required by § 1692e(11) of the FDCPA.

55. The Collection Letter contains several false, deceptive, or misleading statements. For example:

    a. Pursuant to Louisiana laws (Louisiana Laws TITLE 14 Criminal law :: RS 14:220.1 Leased movables; obtaining by false representation; failure to return or surrender; penalties; restitution), **YOU HAVE FORTY-EIGHT (48) HOURS FROM THE RECEIPT OF THIS DEMAND TO RETURN THE LEASED PROPERTY TO THE LESSOR AT THE ADDRESS SPECIFIED IN THE RENTAL CONTRACT OR A CRIMINAL COMPLAINT MAY BE FILED WITH THE PROPER AUTHORITIES FOR POSSIBLE CRIMINAL PROSECUTION**."

    b. "If you are unable to return the below mentioned merchandise, please call the following number within (forty-eight) 48 hours of the receipt of this letter TO AVOID CRIMINAL CHARGES BEING FILED (refer to backside): 1-888-427-0997."

    c. *"**B.(1) Whoever violates the provision of this Section when the value of the leased movable is less than one thousand dollars shall be fined not more than five hundred dollars or imprisoned for not more than six months, or both.**"*

    d. *"**(2) Whoever violates the provisions of this Section when the value of the leased movable is one thousand dollars or more shall be fined not more than two thousand dollars or imprisoned with or without hard labor for not more than two years, or both.**"*

56. When Turtle Creek receives a call placed to 1-888-427-0997, Turtle Creek's representative answers the call and attempts to collect debts.

57. Turtle Creek has no interest in the return of any property it may be entitled to repossess.

58. Turtle Creek's only interest is in collecting on the alleged debt. (A true-and-correct copy of documentation demonstrating an example that Turtle Creek's only interest is in collecting on alleged debts—and not the return of property—is attached hereto as Exhibit F).

59. Turtle Creek cannot file criminal charges against Plaintiff.

60. At best, Turtle Creek can request for a district attorney to pursue criminal charges against Plaintiff.

61. Arguendo, even if Turtle Creek were able to request that a district attorney take some action against Plaintiff, it is the district attorney's decision to charge Plaintiff with a crime—not Turtle Creek's.

62. Arguendo, even if a district attorney were to pursue criminal charges against Plaintiff, such charges do not automatically mean that the district attorney would secure a conviction—let alone a judge or jury then deciding to imprison the Plaintiff.

63. The Collection Letter includes several false, deceptive, or misleading statements about the Louisiana laws that it cites.

64. Plaintiff received the Collection Letter via certified US Mail on May 20, 2019.

65. More than 48 hours have passed since Plaintiff received the Collection Letter.

66. Plaintiff has not called Turtle Creek within 48 hours after receipt of the Collection Letter.

67. Plaintiff has not returned the alleged leased property to Turtle Creek.

68. To date, Turtle Creek has not requested that criminal charges be pursued against Plaintiff.

69. To date, Turtle Creek has not taken any legal action against Plaintiff.

70. Turtle Creek's acts as described above were done intentionally with the purpose of terrifying and coercing Plaintiff to pay the alleged debt.

71. The natural consequence of Turtle Creek's acts was harassment, oppression and abuse of the Plaintiff.

72. The natural consequence of the language Turtle Creek used in the Letter was to abuse the reader of the Collection Letter.

## **LISA SHAW v. GORDON ENGLE**

73. Plaintiff repeats, reiterates, and incorporates the allegations contained in paragraphs 1-73 herein, with the same force and effect as if the same were set forth at length herein.

74. At all relevant times, acting alone or in concert with others, Engle has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Turtle Creek, and its employees, including the acts and practices set forth in this Complaint.

## **CLASS ALLEGATIONS**

75. Plaintiff brings this claim individually and on behalf of a class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) (the "Class").

76. The Class consists of all consumers in the State of Louisiana to whom Defendants sent a letter seeking to collect a debt, and which letter was sent on or after a date one year prior to the filing of this action.

77. On information and belief, the class is so numerous that joinder of all members is not practicable because there are hundreds and/or thousands of persons who have received debt collection letters and/or notices from Defendants that violate the specific provisions of the FDCPA. Plaintiff is complaining of a standard form letter and/or notice that is sent to hundreds, if not thousands, of persons.

78. There are questions of law and fact common to the class members, which predominate over any questions relating to individual class members. The predominant common questions are (a) whether Defendants engage in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt; (b) whether Defendants use false, deceptive, or misleading representation or means in connection with the collection of any debt; (c) whether Defendants disclose their communications are from a debt collector; (d) whether Defendants threaten to take action that cannot be taken or is not intended to be taken; (e) whether Defendants attempt to collect debt without written notice of the debt containing the information in § 1692g(a)(1)-(5); and (f) whether such practices violate the FDCPA.

79. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

80. Plaintiff has no interest adverse or antagonistic to the interest of the members of the Class.

81. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

82. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.  Individual actions are not economically feasible;

    b.  Members of the class are likely to be unaware of their rights; and

    c.  Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

83. A Class Action will permit large numbers of similarly situated persons to prosecute their common claims in a single forum simultaneously and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein. Absent a Class Action, class members will continue to suffer losses of statutory protected rights as well as monetary damages. If Defendants' conduct is allowed proceed to without remedy they will continue to reap and retain the proceeds of their ill-gotten gains.

84. Defendants have acted on grounds generally applicable to the entire Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## VIOLATION OF THE
## FAIR DEBT COLLECTION PRACTICES ACT
(By Plaintiff and the Class Against Defendants)

85. Plaintiff hereby incorporates the preceding paragraphs as if set forth in full herein.

86. Based upon the foregoing, Defendants' conduct violated the FDCPA as follows:

    a.  Engaging in any conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt in violation of § 1692d;

    b.  Using language the natural consequence of which is to abuse the reader in violation

of § 1692d(2);

c.  Using any false, deceptive, or misleading representation or means in connection with the collection of any debt when Defendants engaged in, at least, the following discrete violations of § 1692e;

d.  Representing that nonpayment of any debt will result in the arrest or imprisonment of any person unless such action is lawful, and the debt collector intends to take such action in violation of § 1692e(4);

e.  Threatening to take action that cannot legally be taken or that is not intended to be taken in violation of § 1692e(5);

f.  Using any false representation or deceptive means to collect or attempt to collect any debt when Defendants engaged in, at least, the discrete violations of § 1692e alleged herein, in violation of § 1692e(10);

g.  Failing to disclose that the communication is from a debt collector in violation of § 1692e(11);

h.  Failing to advise a consumer in all subsequent communications that Defendants is a debt collector in violation of § 1692e(11);

i.  Failing to notify Plaintiff during the initial communication with Plaintiff that the communication was an attempt to collect a debt and any information obtained would be used for that purpose in violation of § 1692e(11);

j.  Using any business, company, or organization name other than the true name of the debt collector's business, company, or organization; and

k.  Failing to send Plaintiff a written notice of her debt containing the information in § 1692g(a)(1)-(5).

87. Plaintiff alleges that to the extent that Defendants' actions, detailed above, violated the FDCPA, those actions were done knowingly and willfully.

88. As a direct and proximate result of Defendants' violations of the FDCPA, 15 U.S.C. § 1692 *et seq.*, Plaintiff and the members of the Class have suffered injury, and may each recover from Defendants one-thousand dollars ($1,000.00) in statutory damages in addition to actual damages and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k.

89. The violations of the FDCPA, 15 U.S.C. § 1692 *et seq.*, described herein present a continuing threat to members of the Class and members of the general public in that Plaintiff is informed and believes and thereon alleges that Defendants continue to engage in these practices, and will not cease doing so unless and until forced to do so by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to grant Plaintiff and the Class members the following relief against Defendants:

A. That this action be certified as a class action on behalf of the Class and Plaintiff be appointed as the representative of the Class;

B. For statutory damages of $500,000.00 or 1% of Defendant's net worth, whichever is the lesser, pursuant to 15 U.S.C. § 1692k;

C. For reasonable attorneys' fees and costs of suit; and

D. For such further relief as this Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands a trial by jury in this action.

DATED: June 12, 2019                          RESPECTFULLY SUBMITTED,

                                              */s/ Samuel J. Ford*
                                              Samuel Ford, Esq. #36081
                                              Scott, Vicknair, Hair & Checki, LLC
                                              909 Poydras St., Ste. 1100
                                              New Orleans, LA 70112
                                              ford@svhclaw.com
                                              Phone: (504) 684-5200
                                              Fax: (504) 613-6351
                                              Attorney for Plaintiff